IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HYUN-TAE JUNG, Ph.D. | : | |
| | : | No.: 18-04568 |
| Plaintiff | : | |
| vs. | : | |
| | : | |
| LEHIGH UNIVERSITY | : | |
| | : | JURY TRIAL DEMANDED |
| Defendant | : | |

## SECOND AMENDED COMPLAINT

Plaintiff, DR. HYUN-TAE JUNG, by and through his undersigned counsel, brings this

action against Defendant, LEHIGH UNIVERSITY, and in support thereof avers as follows:

### PARTIES

1.      Plaintiff, DR. HYUN-TAE JUNG, is an adult individual, citizen and resident of

Pennsylvania with an address of 4568 Par Court, Center Valley, PA 18034.

2.      Defendant, LEHIGH UNIVERSITY, is a private university with in excess of five-

hundred (500) employees which is located at 27 Memorial Drive West, Bethlehem, PA 18015.

### JURISDICTION AND VENUE

3.      This Court has original jurisdiction over the subject matter of this action pursuant

to 28 U.S.C. §1331 because Plaintiff's claims arise under federal law, Title VII of the Civil

Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII").

4.      Venue is proper in this District under 28 U.S.C. §1391(b) and 29 U.S.C. §1132(e)

because the unlawful employment practices alleged occurred in this District and because both

parties reside in this District.

### FACTUAL ALLEGATIONS

5.     Plaintiff is originally from Korea and is of Asian descent.

6.     Plaintiff obtained a Ph.D. in Architecture and Design from Columbia University in 2001 and was thereafter employed as a full-time professor at the University of Nebraska for three (3) years before commencing his employment with Defendant in 2009.

7.     In 2009, Plaintiff was hired by Defendant in the position of Assistant Professor within the Department of Art, Architecture and Design.

8.     At the time of his hire, the Department of Art, Architecture and Design was comprised of approximately ten (10) professors.

9.     Also at the time of his hire, Defendant also hired Nik Nikolov, a Caucasian male, also in the position of Assistant Professor within the Department of Art, Architecture and Design who held only a Master's Degree in Architecture.

10.    Also at the time of Plaintiff's hire, Defendant hired Nick Sawiki, another Caucasian male, in the position of Assistant Professor within the Department of Art, Architecture and Design, whose background was in Art History.

11.    As detailed below, both Mr. Nikolov and Mr. Sawiki were granted tenure by Defendant in the Spring of 2017 and the Spring of 2016, respectively, while Plaintiff's tenure was wrongfully denied for the discriminatory reasons as detailed below.

12.    In addition to Mr. Nikolov and Mr. Sawicki, Plaintiff is aware of additional non-Asian and non-Korean candidates and members of the Department of Art, Architecture and Design who possessed only Master's degrees and whom were both awarded tenure at or about the same time of Plaintiff's denial.

13.    Plaintiff was at all times as qualified and/or more qualified in terms of his education, teaching performance and academic achievement and scholarship as these four (4) non-Korean and non-Asian individuals who were therefore treated more favorably than he.

14.    As a part of the tenure track that Plaintiff was on, he was subjected to several annual reviews centered upon the three (3) criteria utilized by Defendant to make tenure decisions, namely, (1) teaching; (2) research and/or scholarship; and (3) service.

15.    All tenure decisions made by Defendant center upon applicants meeting these three (3) criteria.

16.    Plaintiff in fact met and even exceeded these three (3) criteria during the term of his employment and tenure review period and Defendant's decision to ultimately deny him tenure was based on factors outside of these criteria, namely, his race and national origin.

17.    These annual reviews consisted in part of faculty reviews during which Plaintiff's performance was evaluated, in part, by the tenured members of the Art, Architecture and Design department.

18.    Plaintiff received a favorable faculty annual review for the school year 2009-2010 indicating that he had met and/or exceeded the three (3) criteria utilized by Defendant in making its tenure decisions and was in fact issued a "Faculty Summary Letter" indicating as much.

19.    In addition to having received a favorable faculty review, Plaintiff also received positive feedback from his student evaluations, which feedback was received consistently and during each and every academic year of his employment with Defendant.

20.    During the academic year of 2010-2011, in addition to an annual faculty review, Plaintiff was required to attend an annual meeting with the then new Chair of the Art, Architecture and Design department, Professor Lucy Gans.

3

21.     During this meeting, Professor Gans indicated to Plaintiff that she was informed by a colleague and tenured member of the Art, Architecture and Design department, Professor Anthony Viscardi, that it was Professor Viscardi's belief that "teaching architecture should not include forming a cult" referring apparently to Professor Viscardi's belief that Plaintiff was garnering too much loyalty and/or affection and/or respect of a group of undergraduates that continued to register for and complete Plaintiff's course offerings.

22.     Upon information and belief, this same group of students who enrolled in Plaintiff's classes would avoid enrolling in Professor Viscardi's courses.

23.     As a result of the meeting referred to above with Professor Gans, it was Plaintiff's belief that Professor Viscardi had made a specific complaint about him and further that Professor Viscardi's intention in doing so was due to his race and/or national origin.

24.     Plaintiff received another favorable faculty review for the school year 2010-2011 indicating that he had met and/or exceeded the three (3) criteria utilized by Defendant in making its tenure decisions and was in fact issued a "Faculty Summary Letter" indicating as much.

25.     During the academic year 2010-2011, Plaintiff's son was born and he was not subjected to any type of annual review of his performance by Defendant.

26.     At the beginning of the academic year 2012-2013, Plaintiff did however receive what he understood to be his first "Mid-Term Review" which occurred each year for non-tenured faculty and which occurred every two years for tenured faculty, the results of which were submitted to the Provost.

27.     In connection with this first "Mid-Term Review," Plaintiff submitted to Defendant written materials addressing the three criteria used by Defendant in making tenure determinations as described above and received positive feedback by the then-provost, Patrick Farrell, reappointing him as an assistant professor for his third two (2) year term in the

Department of Art, Architecture and Design by the "unanimous recommendations from your department colleagues and Dean Donald Hall", again, in recognition of Plaintiff having met and/or exceeded the three (3) criteria utilized by Defendant in making its tenure decisions.

28.    During the 2011-2012 school year, Professor Viscardi indicated to Plaintiff's colleagues, including Professor Bruce Thomas, that Plaintiff was "teaching origami" to his students which is a clearly racially-charged comment intended to diminish through negative stereotyping Plaintiff's cultural and historic identity and standing as a professor within the university setting.

29.    It was during the same period of time that Plaintiff became aware that Professor Viscardi was similarly viewed by several minority students as a racist.

30.    Specifically, three (3) former students, B.S, M.C and S.K, all of whom witnessed and/or were subjected to Professor Viscardi's inappropriate and often racially divisive and discriminatory comments regarding Plaintiff.

31.    Plaintiff is also aware of no less than five (5) additional students who witnessed and/or were subjected to Professor Viscardi's inappropriate and often racially divisive and discriminatory comments regarding Plaintiff.

32.    During the 2013-2014 academic year, Plaintiff was subjected to a second Mid-Term Review towards his consideration for tenure.

33.    As before, Plaintiff received positive feedback in all three (3) criteria and received a letter from Provost Farrell reappointing him as an assistant professor for his third two (2) year term in the Department of Art, Architecture and Design, again, by the "unanimous recommendations from your department colleagues and Dean Donald Hall."

34.    In the fall of 2016, Plaintiff first met with Defendant's EEOC coordinator, Karen Salvemini, during which he explicitly complained of discriminatory treatment based on Professor Viscardi's conduct as described above.

5

35.    Plaintiff also indicated to Ms. Salvemini that he suspected that he was being discriminated against based on his race and national origin and that he believed that Professor Viscardi was similarly discriminating against minority students.

36.    Plaintiff later discovered that pursuant to Defendant's policies, Ms. Salvemini in fact initiated an internal investigation concerning Plaintiff's claims of racial and/or national origin based discrimination.

37.    Plaintiff additionally met with Vice Provost, Robert Flowers, and Ms. Salvemini separately in the winter of 2016 in which he renewed his complaints and requested that an investigation be performed.

38.    Upon information and belief, neither Ms. Salvemini or any other employee of Defendant performed any meaningful investigation into Plaintiff's claims of discriminatory treatment based on his national origin and race.

39.    As is Defendant's policy, the tenured faculty of the Department of Art, Architecture and Design met to discuss Plaintiff's application for tenure and issued a majority recommendation that he be promoted to Associate Professor with tenure, except for Professor Viscardi who expressly opposed Plaintiff's grant of tenure. The final vote was eight (8) "yes" and two (2) "no", the "no's" being reached by Mr. Viscardi and Ms. Chupa, the new chair of the Department of Art, Architecture and Design.

40.    In between Plaintiff's two (2) meetings with Ms. Salvemini, during which he explicitly notified her of his belief that he was being discriminated against based on his national origin and race, in or about September 2016 Plaintiff's tenure application was denied and which was later memorialized by letter from Provost Farrell dated May 19, 2017.

41.    According to Provost Farrell, and based on prior correspondence from him dated May 12, 2017, Plaintiff's tenure application was denied due to his purported lack of scholarship.

6

42.     Upon information and belief, Plaintiff's tenure denial was the first instance in which an application for tenure within the Department of Art, Architecture and Design had been denied for Defendant in thirty (30) years.

43.     Upon information and belief, however, Plaintiff's peer-reviewed scholarship in fact exceeds the requirements for attaining tenure and in fact far exceeds the scholarship and publications of both Nick Nikolov and Nick Sawiki, both of whom achieved tenure.

44.     Specifically, much of Plaintiff's scholarship has been published in peer-reviewed Korean academic publications which have been entirely discounted by Defendant in making its tenure decision solely because these publications are Korean.

45.     Importantly, Plaintiff was consistently found to have met all of the requirements of tenure during his review period and within the categories of service and teaching during the final review.

46.     In accordance with rights afforded to him, Plaintiff appealed his tenure denial which was rejected resulting in the loss of his employment with Defendant beginning in the academic year 2018-2019.

## ADMINISTRATIVE EXHAUSTION

47.     Plaintiff has satisfied the requirement of exhaustion of remedies through Title VII having commenced his investigation through the office of Civil Rights and later filing a Charge of Discrimination with the Equal Employment Opportunity Commission on or about January 29, 2017.

48.     Plaintiff has received a "Right to Sue" letter dated May 22, 2018.

49.     Plaintiff timely filed and served a Writ of Summons with the Northampton County Court of Common Pleas on or before the expiration of the ninety-day period afforded to him through the Right to Sue letter issued.

**COUNT ONE**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**42 U.S.C. § 2000e *et seq.* – RACE AND NATIONAL ORIGIN**
**DISCRIMINATION – ADVERSE TREATMENT/**
**DISPARATE TREATMENT**

50.    Plaintiff incorporates herein by reference all of the foregoing paragraphs as though fully set forth below.

51.    Plaintiff was entirely qualified for continued employment by Defendant and for the grant of tenure.

52.    Defendant's termination of his employment and denial of tenure was motivated by discriminatory animus based on Plaintiff's national origin and race.

53.    Plaintiff's Caucasian, non-Korean colleagues were provided advancement opportunities and tenure based on fewer and less stringent criteria than was applied to him.

54.    Defendant disparate treatment of Plaintiff verses the above-referenced colleagues constitutes unlawful discrimination on the basis of his national origin and race.

55.    In addition to Plaintiff's disparate treatment resulting in his tenure denial due to unlawful discrimination, Plaintiff was further subjected to direct discrimination in the form of Professor Viscardi's racially driven discriminatory comments and treatment by both Professor Viscardi and by other members of the Department of Art, Architecture and Design.

        WHEREFORE, Plaintiff respectfully requests this Court enter an Order against Defendant requiring compensation for damages suffered in the form of lost wages (backpay); anticipated wages (front pay); emotional distress; mental anguish; pain and suffering;

8

inconvenience; humiliation; loss of the enjoyment of life; punitive damages; reasonable

attorney's fees and costs; and all such other relief as this Court deems just, equitable and proper.

## JURY DEMAND

56.    Plaintiff demands a trial by jury of all issues in this action.

MESHKOV & BRESLIN

By:/s/ adm2795
ADAM D. MESHKOV, ESQUIRE
*Attorney for Plaintiff*
830 Lehigh Street
Easton, PA 18042
(T) 610.438.6300/ (F) 610.438.6304

Date: December 12, 2018

9